HUDSON, Judge.
 

 On 23 September 2002, defendant Herman Frank Hemby, Jr., was indicted on charges of robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury. A superseding indictment charging defendant with assault with a deadly weapon inflicting serious injury was issued on 9 December 2002. The case was tried at the 16 December 2002 Criminal Session of the Superior Court in Wake County.
 

 The evidence presented at trial tended to show the following: On 3 August 2002, Michael Razzaq and a friend drove to the Fox Hollow neighborhood in Wake County to purchase marijuana. When he arrived, Razzaq saw defendant and two other people leaning upagainst some car "hanging out." When he got out of the car, the defendant called to him and asked him what he was looking for. Razzaq told defendant he was "looking for a dime bag of weed." Defendant told him to come with him, and started walking toward the back of a building. Razzaq started following defendant, but stopped because he feared being robbed. When he stopped, defendant pulled out a gun and said "Let me get that." Razzaq told defendant he did not have any money, and turned his back to him and started walking away. Two seconds after he turned his back, Razzaq heard a gunshot. Razzaq continued walking calmly to his car. When he got to the car, he opened the door, and before he got in he looked back at defendant. Defendant "pointed the gun sideways at me . . . and fired again, and then I got in the car." Razzaq's friend then drove them away.
 

 On the same date, Katherine Jeter lived at Fox Hollow Drive in Wake County. Jeter testified that she was upstairs in her home and thought she heard arguing outside. Jeter looked out and saw Chris McLamb up against a car. Jeter testified that she also saw another person standing by a car, who she later learned was the defendant. An individual named Roderick was standing near McLamb. Jeter went outside to smoke a cigarette, and sat down on her porch. After she heard a gunshot, Jeter decided to go back inside. As she got up, she was hit by a bullet in her left shoulder.
 

 Defendant was convicted of assault with a deadly weapon inflicting serious injury and attempted robbery with a dangerous weapon. The convictions were consolidated for judgment anddefendant was sentenced to a term of 88 to 115 months imprisonment. Defendant appeals. After careful review of the record, briefs and contentions of the parties, we find no error.
 

 We first consider whether the trial court erred in denying defendant's motion to dismiss the charge of attempted robbery with a dangerous weapon. Defendant contends that there was uncontradicted evidence that he did not endanger Razzaq's life during their encounter, and Razzaq testified that he was never in fear for his life or physical safety. Accordingly, defendant argues that there was insufficient evidence to sustain the conviction.
 

 To survive a motion to dismiss, the State must present substantial evidence of each essential element of the charged offense.
 
 State v. Cross,
 

 345 N.C. 713
 
 , 716-17,
 
 483 S.E.2d 432
 
 , 434 (1997). "`Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.'"
 
 Id.
 
 at 717,
 
 483 S.E.2d at 434
 
 (quoting
 
 State v. Olson,
 

 330 N.C. 557
 
 , 564,
 
 411 S.E.2d 592
 
 , 595 (1992)).
 

 Here, defendant was convicted of robbery with a dangerous weapon pursuant to N.C.G.S. § 14-87. The essential elements of robbery with a dangerous weapon are: "(1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of a person is endangered or threatened."
 
 State v. Call,
 

 349 N.C. 382
 
 , 417,
 
 508 S.E.2d 496
 
 , 518 (1998). Our Supreme Court has stated that: The essential difference between armed robbery and common law robbery is that, to prove the former, the State must produce evidence sufficient to show that the victim was endangered or threatened by the use or threatened use of a "firearm or other dangerous weapon, implement or means." The question in an armed robbery case is
 
 whether a person's life was in fact endangered or threatened by defendant's possession, use or threatened use of a dangerous weapon, not whether the victim was scared or in fear of his life.
 

 State v. Joyner,
 

 295 N.C. 55
 
 , 63,
 
 243 S.E.2d 367
 
 , 373 (1978) (citations omitted) (emphasis added).
 

 Here, in the light most favorable to the State, the evidence shows that defendant attempted to rob Razzaq while brandishing a firearm. When Razzaq walked away from defendant, defendant fired the gun twice. A firearm is a dangerous weapon
 
 per se.
 
 See
 
 State v. Bullard,
 

 312 N.C. 129
 
 , 160,
 
 322 S.E.2d 370
 
 , 388 (1984);
 
 State v. Ross,
 

 31 N.C. App. 394
 
 , 395-96,
 
 229 S.E.2d 218
 
 , 219 (1976),
 
 disc. rev. denied and appeal dismissed,
 

 291 N.C. 715
 
 ,
 
 232 S.E.2d 206
 
 (1977). "Since defendant used a dangerous weapon, there is a mandatory presumption that the victim's life was
 
 in fact
 
 endangered or threatened."
 
 State v. Wiggins,
 

 78 N.C. App. 405
 
 , 408,
 
 337 S.E.2d 198
 
 , 199-200 (1985) (emphasis in original). Accordingly, we conclude there was sufficient evidence to sustain the conviction.
 

 Defendant next argues that the trial court committed plain error when it allowed Razzaq to testify that he had heard a guy talking about defendant robbing people. Razzaq testified that:
 

 The days or weeks before I went over there [Fox Hollow] when it happened I heard about aguy talking about that he was going around robbing people that comes [sic] over there, so watch out for him, and I heard one incident that he took a guy back of the house and tried to rob him.
 

 Defendant contends that this evidence was inadmissible hearsay and that the jury would have reached a different result had the evidence been excluded.
 

 We find defendant's argument to be without merit. Assuming
 
 arguendo
 
 that Razzaq's testimony was hearsay, it was elicited by defense counsel. Thus, any purported error was invited error and does not merit relief. N.C.G.S. § 15A-1443(c);
 
 State v. Mitchell,
 

 342 N.C. 797
 
 , 806,
 
 467 S.E.2d 416
 
 , 421 (1996) ("Defendant cannot assign error to hearsay testimony which he elicited");
 
 see also State v. Gay,
 

 334 N.C. 467
 
 , 485,
 
 434 S.E.2d 840
 
 , 850 (1993) ("invited error does not merit relief"). Accordingly, the assignment of error is overruled.
 

 Defendant finally argues that the trial court erred by allowing Detective Jordan to testify that Jeter told him that she saw two individuals involved in what she believed to be a robbery attempt. Defendant argues that the statement did not corroborate Jeter's testimony, noting that Jeter testified that she did not see anything. Defendant further contends that the testimony was error because it was hearsay and speculative. We are not persuaded.
 

 Even assuming
 
 arguendo
 
 that the admission of Detective Jordan's testimony was error, there was no prejudice to the defendant in light of the overwhelming evidence of his guilt. Razzaq testified about the robbery attempt and unequivocallyidentified defendant as the man who tried to rob him. During the robbery attempt, defendant fired two shots from his firearm. McLamb identified at trial the defendant as the person who walked with Razzaq to the side of the house, and stated that he saw defendant hold a gun up, at which point he ran. Thus, in light of the evidence against defendant, any purported error in the admission of Detective Jordan's testimony was harmless. Accordingly, we find no error.
 

 No error.
 

 Judges STEELMAN and THORNBURG concur.
 

 Report per Rule 30(e).